**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 25-57-3** |
| MD RAFIKUL ISLAM | : | |
| a/k/a "Mohammed Rafikul Islam," | | |
| a/k/a "Jibon" | | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant MD Rafikul Islam, a/k/a "Mohammed Rafikul Islam," a/k/a "Jibon," ("Islam") is a former public official who tried to help another public official steal a mayoral election. In 2021, Islam was serving on the Millbourne Borough Council with four other people, including MD Nurul Hasan ("Hasan") and MD Monsur Ali, a/k/a "Mithu," ("Ali"), when Hasan decided to run for mayor. Hasan lost his party's mayoral primary by 18 votes and then decided to launch a write-in campaign for the November general election. Islam agreed to help with that campaign. Sadly, Islam also agreed to help Hasan and Ali commit voter registration fraud and voter fraud in an effort to win that election.

Ultimately, the co-conspirators' efforts failed, as Hasan still lost the general election by 27 votes, but their crimes caused immeasurable harm on the integrity of the electoral process and the public's faith in the fairness of elections. As the Delaware County Election Director stated in his letter to the Court, the conspirators' actions "gave fodder to those who seek to sow mistrust in the electoral franchise" and "may well be cited in the future by those who lose in a close contest, even when there are no indications of fraud." The County Election Director is urging this Court

to "send a clear message that such fraud – such crimes against our electoral franchise – will be detected, will be investigated and will be punished." The government joins that request.

The government also agrees with the Presentence Investigation Report's calculations that Hasan's total offense level is 8 and his criminal history category is I, which means his sentencing range under the United States Sentencing Guidelines is 0-6 months' imprisonment and a fine of between $2,000 and $20,000. For reasons set forth below, a sentence within that range – one that includes some restriction on Islam's liberty and a financial penalty, as well as a community service obligation – would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a).

## I.    <u>STATEMENT OF THE CASE</u>

### A.    <u>Procedural History</u>

On February 18, 2025, a federal grand jury sitting in the Eastern District of Pennsylvania returned a 33-count indictment against Hasan, Ali, and Islam. The indictment specifically charged Islam with one count of conspiracy, in violation of 18 U.S.C. § 371 (Count 1), three counts of providing and aiding and abetting the providing of false information in registering to vote, in violation of 52 U.S.C. § 10307(c) and 18 U.S.C. § 2 (Counts 9, 10, and 13), and three counts of voter registration fraud and aiding and abetting voter registration fraud, in violation of 52 U.S.C. § 20511(2)(A) and 18 U.S.C. § 2 (Counts 25, 26, and 29).

On April 1, 2025, Islam appeared before the Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, and pleaded guilty to all 9 charges against him, pursuant to a written plea agreement with the government.

B.    **Offense Conduct**

At all times relevant to this case, Millbourne was a municipality located in Delaware County, Pennsylvania, with an area of approximately 0.1 square miles and a population of slightly more than 1,200. Millbourne had a municipal government consisting of a mayor, five borough councilmembers, a tax collector, a police chief, and some administrative personnel. The borough council had a president and vice president. The mayor, councilmembers, and tax collector were all elected officials who serve four-year terms. Nearly all of Millbourne's registered voters were members of one political party, so if a candidate for office were to win that party's primary, that candidate was extremely likely to win the general election.

In 2021, Millbourne held elections for mayor and other offices. At the time, Islam, Hasan, and Ali were all members of the borough council. Hasan, who was vice president of the council, entered the majority party's primary election for mayor and was defeated by a vote count of approximately 138 to 120. Afterward, Hasan decided to run as a write-in candidate for mayor in the general election. Ali and Islam agreed to support Hasan's write-in candidacy.

In Pennsylvania, registering to vote permitted a registrant to vote in all upcoming elections for both federal as well as non-federal candidates for as long as the registration was valid. The Office of Pennsylvania's Secretary of State ("SOS") oversaw elections in the Commonwealth and operated a statewide database of all registered voters. The SOS's Office also operated an online voter registration website, which was accessible to the public (the "PAOVR" website). Any person who accessed the PAOVR website could either submit a new voter registration application or edit an existing voter's registration information as long as the person knew certain personal identification information about the voter. A person who provided such

information about a voter on the PAOVR website could change the voter's name, address, and/or party affiliation, and/or request a mail-in or absentee ballot.

The Millbourne primary elections were held on May 18, 2021. At the time, there were approximately 549 registered voters in Millbourne. By the time the general election was held on November 2, 2021, there were approximately 578 registered voters in Millbourne. Most of the additional registered voters were people who did not live in Millbourne and had previously been registered to vote in locations outside of Millbourne, but whose voter registration addresses had been changed to Millbourne addresses by Hasan through the PAOVR website. Among the non-Millbourne residents whose voter registration addresses were changed to locations in Millbourne in October 2021 were the 16 individuals identified as Persons A through P in the indictment.

From at least May 2021 until February 2025, Islam conspired with Hasan, Ali, and other persons to: (a) knowingly and willfully give false information as to the name and address of voters to establish their eligibility to register and vote in elections from Millbourne, including elections for federal office; and (b) commit voter registration fraud by the procurement and submission of voter registration applications that were known by the defendants to be materially false, fictitious, and fraudulent under the laws of Pennsylvania.

As part of that conspiracy, the defendants agreed to attempt to steal the 2021 general election for mayor of Millbourne by (a) obtaining personal identification information of non-Millbourne residents, such as their names, addresses, dates of birth, and driver's license numbers; (b) using the personal identifying information to access the PAOVR website and change the voter registration addresses for those non-Millbourne residents to locations within Millbourne; (c) using the PAOVR website to request that mail-in or absentee ballots for those

non-Millbourne residents be sent to addresses accessible by one or more of the defendants; (d) retrieving the ballots from the Millbourne mailboxes; (e) impersonating the voters and fraudulently casting write-in votes for Hasan to be mayor; (f) enclosing the fraudulently completed ballots in envelopes and forging the voters' signatures on the envelopes; and (g) submitting the ballots in their envelopes to the Delaware County Board of Elections.

Hasan personally did almost all of the fraudulent voter registrations himself, using a computer at his place of business to access the PAOVR website and change the voting addresses for non-Millbourne residents to locations within Millbourne. Every time that Hasan accessed the PAOVR website to change a voter registration address, he provided an email address for the voter. Many times, Hasan provided one of four email addresses that he used and accessed. To divert suspicion from himself, however, Hasan sometimes provided email addresses belonging to other people, who knowingly and willfully permitted Hasan to use their email addresses to cover up Hasan's actions. One of those people was defendant Islam.

More specifically, defendant Islam allowed Hasan to use two of Islam's email addresses when Hasan fraudulently changed the voter registration addresses for six individuals, including the individuals identified as Persons H, I, and L in the indictment. Islam also permitted Hasan to use two of Islam's email addresses when requesting mail-in ballots for five non-Millbourne residents.

In total, Islam and his co-conspirators falsely registered nearly three dozen non-Millbourne residents as Millbourne voters and cast ballots for those non-Millbourne residents in the 2021 general election for mayor of Millbourne. Their efforts to steal the election were ultimately unsuccessful as Hasan still lost the general election by a vote of approximately 165 to

138. However, by registering non-residents as Millbourne voters in 2021, the defendants made those people eligible to vote in future elections held in part for the purpose of electing candidates for federal office, including the offices of President, Vice President, presidential elector, member of the United States Senate, and member of the United States House of Representatives. By doing this, the defendants knowingly and willfully deprived, defrauded, and attempted to deprive and defraud the residents of the Commonwealth of Pennsylvania of a fair and impartially conducted election process.

### C.    Relevant Conduct

Islam did not cause fraudulent voting in a federal election because there were no candidates for federal office on the November 2021 ballot. He did, however, commit state voter fraud, which can be considered by this Court as relevant conduct for sentencing purposes. Specifically, Islam helped Hasan fraudulently apply for ballots in the November 2021 election on behalf of non-Millbourne residents by permitting Hasan to use Islam's email addresses when requesting five of those ballots. Islam also helped Hasan and Ali complete and mail fraudulent ballots to the Delaware County Board of Elections.

### II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

Islam is facing the following total statutory maximum sentence: Count 1 (conspiracy, in violation of 18 U.S.C. § 371), 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment; Counts 9, 10, and 13 (giving false information in registering to vote, in violation of 52 U.S.C. § 10307(c)), 5 years' imprisonment, a 3-year period of supervised release, a $10,000 fine, and a $100 special assessment; and Counts 25, 26, and 29

(voter registration fraud, in violation of under 52 U.S.C. 20511(2)(A)), 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

In total, therefore, Islam is facing a maximum possible sentence of 35 years' imprisonment, 3 years' supervised release, a fine of $1,030,000, and a $700 special assessment.

> **B.**    **Guidelines Calculation**

The government agrees with the PSR's guidelines calculations. Under Section 3D1.2(d), all of the counts are grouped together for guidelines calculations purposes because the offense behavior was ongoing or continuous in nature.

The applicable guideline for violations of 52 U.S.C. § 10307(c) is U.S.S.G. § 2H2.1. The base offense level for Islam's crimes is 12, pursuant to Section 2H2.1(a)(2), because Islam obstructed an election by fraud and deceit. There are no specific offense adjustments or adjustments for Islam's role in the offenses.

Islam is entitled to a two-level downward adjustment to 10, pursuant to Section 3E1.1(a), because he has demonstrated acceptance of responsibility for his crimes. Islam also meets the criteria in Section 4C1.1 for two-level reduction as a zero-point offender.

Accordingly, Islam's total offense level is 8. He has zero criminal history points, so his criminal history category is I. Islam's imprisonment range, therefore, is 0-6 months under the guidelines, *see* PSR ¶ 84, and his fine range is $2,000 to $20,000. *Id.* ¶ 96.

> **III.**    **ANALYSIS**

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), *cited favorably in United States v. Friedman*, 2011 WL 4470674, at *14 (3d Cir. Sept. 28, 2011); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329; *see also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the

parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

As indicated above, the defendant's properly calculated advisory sentencing range under the current guidelines is 0-6 months' imprisonment and a fine of between $2,000 and $20,000. A sentence within that range, which includes some restriction on Islam's liberty, would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

---

[1]  Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

Sections 3553(a)(4) and (a)(5) specifically direct the Court to consider the applicable guidelines and commentary, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing among similarly situated defendants. Collectively, therefore, they counsel for the imposition of a within-Guidelines sentence of 0-6 months' imprisonment and a fine of between $2,000 and $20,000. The nature and circumstances of the defendant's offenses, and Islam's particular history, and characteristics also support the imposition of a sentence within that range.

Islam's offenses in this case are extremely serious. By agreeing to help Hasan try to steal an election and actively helping Hasan with those efforts, Islam harmed more people than just Hasan's mayoral opponent and the Millbourne residents who voted for him. Islam and his co-defendants deprived each and every Millbourne resident of their right to free and fair elections. Islam also indirectly harmed all Pennsylvanians and all Americans by giving people a reason to doubt the integrity of public elections. As the Delaware County election director wrote, "the electoral franchise must have the public's trust." PSR ¶ 29. "It is a trust that sometimes is maligned by bad actors who spread false claims about elections. It is a trust that other times, less frequently, is maligned by bad actors who violate election laws and commit fraud without concern for the ramifications. The crimes by defendants Hasan, Ali and Islam fall into this latter category." *Id.*

There are two factors that make Islam's crimes particularly troubling in this case. First, Islam was not just an ordinary citizen who committed election crimes. He was a public official himself, a member of the Millbourne Borough Council. The residents of Millbourne trusted and respected Islam and voted for him to be one of their leaders. Islam betrayed that trust when he

agreed to help and did help Hasan try to steal the mayoral election. Second, Islam recently obtained the privilege of becoming a naturalized United States citizen, and when he did, Islam took an oath to "support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic." Instead of defending the Constitution and laws of the United States, Islam chose to undermine one of the most important rights protected by the Constitution and laws of this country: the right to self-determination embodied in free and fair elections. Islam's offenses and his personal circumstances warrant a sentence that includes some restriction of his liberty as well as a within-Guidelines fine and a community service obligation.

Such a sentence would also promote respect for the law, provide just punishment for Islam's crimes and serve the sentencing goal of general deterrence. It would send a message to other people in Islam's position that severe consequences await them if they try to help someone else steal an election.

The sentencing goal of providing Islam with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, id. § 3553(a)(2)(D), is not applicable in this case.

———————————————————

11

IV.    **<u>CONCLUSION</u>**

For all the foregoing reasons, the government respectfully requests that this Court sentence Islam to a within-Guidelines sentence of 0-6 months' imprisonment, which includes some restriction on Islam's liberty. Additionally, the government asks this Court to order Islam to pay a within-Guidelines fine of $2,000 to $20,000 and perform some form of community service, as conditions of a 3-year term of supervised release.

Respectfully submitted,
DAVID METCALF
United States Attorney


*/s/ Mark B. Dubnoff*
MARK B. DUBNOFF
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Government's

Change of Plea Memorandum was served by email upon:

Robert Keller,
Counsel for the Defendant

Date: June 11, 2025                    */s/ Mark B. Dubnoff*_____
                                       MARK B. DUBNOFF