## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

              v.            :            CRIMINAL NO. 25-57-1

MD NURUL HASAN            :

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL OR TO EXTEND HIS SURRENDER DATE

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Mark B. Dubnoff, Assistant United States Attorney for the District, hereby opposes defendant MD Nurul Hasan's motion for release pending appeal or, alternatively, to extend his surrender date. The defendant claims in his motion that his planned appeal will raise "a substantial question of law likely to result in either a sentence that does not include a term of imprisonment, or an order for a new trial." ECF No. 70-2, at 3, ¶ 5. As explained below, the defendant's assertion is baseless. Indeed, one of Hasan's stated arguments on appeal – that his guilty plea should be vacated because the Court did not provide him with a satisfactory interpreter at the plea hearing – is facially frivolous, given Hasan's sworn testimony at the hearing that he could "read, write, and understand the English language."

### I.    Background and Procedural History

Hasan is a former vice president of the Millbourne Borough Council, a government body that regularly conducts public meetings in English. In 2021, Hasan ran for mayor and lost his party's primary by 18 votes. Hasan then decided to launch a write-in campaign for the general election, and in order to boost his chances, Hasan conspired with two other Millbourne

councilmembers to steal the election through an elaborate voter registration fraud and voter fraud scheme. Specifically, Hasan and his co-conspirators agreed to register dozens of non-Millbourne residents as Millbourne voters, apply for mail-in ballots to be addressed to those newly-registered voters at Millbourne locations, steal the ballots out of the Millbourne mailboxes, write in votes for Hasan to be mayor, forge the voters' signatures on the envelopes containing the mail-in ballots, and then mail the ballots back to the Delaware County Board of Elections. Hasan and his co-conspirators' efforts failed, as Hasan still lost the general election by 27 votes.

On February 18, 2025, a federal grand jury sitting in the Eastern District of Pennsylvania returned a 33-count indictment against Hasan, MD Munsur Ali, a/k/a "Mithu," and MD Rafikul Islam, a/k/a "Mohammad Rafikul Islam," a/k/a "Jibon." The indictment charged Hasan with one count of conspiracy, in violation of 18 U.S.C. § 371 (Count 1), sixteen counts of providing and aiding and abetting the providing of false information in registering to vote, in violation of 52 U.S.C. § 10307(c) and 18 U.S.C. § 2 (Counts 2 through 17), and sixteen counts of voter registration fraud and aiding and abetting voter registration fraud, in violation of 52 U.S.C. § 20511(2)(A) and 18 U.S.C. § 2 (Counts 18 through 33).

On April 1, 2025, Hasan appeared before the Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, and pleaded guilty to all 33 charges, pursuant to a written plea agreement with the government. At the start of the hearing, the Courtroom Deputy swore in a Bengali interpreter, but after stating her name, the interpreter informed the Court that Hasan told her he understood English. Tr. at 3.[1] Hasan's lawyer then

---

[1] A copy of the transcript is attached as Exhibit A.

2

added: "Judge, he's … pretty good with English. This was just out of an abundance of caution." *Id.*

The clerk then swore in the defendant. *Id.* at 4. The Court's first question was: "Mr. Hasan, do you read, write, and understand the English language?" *Id.* Without waiting for the question to be interpreted, Hasan answered, "yes." *Id.*

Also without requesting interpretation, Hasan testified that he understood that if he gave false answers to the judge's questions, he would be subject to possible prosecution for perjury. *Id.* at 5. Hasan assured the Court that if he did not understand a question from the judge, or if he wished a further explanation, he would let the Court know. *Id.* Hasan then answered all of the Court's questions, and only rarely consulted with the interpreter for clarification Tr. at 34-37. Among other things, Hasan testified that he was represented by Michael Dugan, that he had ample opportunity to discuss his case with attorney Dugan, and that he was satisfied with Dugan's representation of him. *Id.* at 8. Additionally, after the undersigned Assistant United States Attorney summarized Hasan's plea agreement, which included an appellate waiver,[2] without requesting any interpretation of the summary, Hasan testified that the summary was accurate. *Id.* at 13. Hasan also testified that he had signed the plea agreement; he had read the plea agreement before he signed it; he understood what the plea agreement said; and he had discussed the agreement with attorney Dugan before he signed it. *Id.*

---

[2] The waiver provided that Hasan waived all of his appellate rights, except in four cases: (1) if the Court imposed a sentence above the statutory maximum; (2) if the Court upwardly departed from Hasan's properly-calculated guideline sentence; (3) if the Court upwardly varied from Hasan's guideline sentence; and (4) if Hasan were to allege that his counsel provided constitutionally ineffective assistance of counsel.

The Court explicitly went over the appellate waiver contained in Hasan's plea agreement, and Hasan testified that he understood that if he pleaded guilty, he would be giving up virtually all of his rights to appeal any sentence imposed by the Court. *Id.* at 19. The Court discussed the United States Sentencing Guidelines with the defendant and asked if Hasan understood that "the Court could, in appropriate circumstances, impose a sentence which is more severe or less severe than the sentence which the advisory guidelines or anyone else recommends." *Id.* at 35. Hasan stated that he understood. *Id.*

The Court also asked Hasan if he understood that he would not be entitled to withdraw his guilty plea if the Court should impose a more severe sentence than Hasan expected or than anyone else recommended. *Id.* at 35-36. Hasan said he understood. *Id.* at 36. Hasan said that he still wanted to plead guilty, so after proceeding with a lengthy and standard colloquy with the defendant to make sure that Hasan's plea was knowing and voluntary, the Court accepted his plea. *Id.* at 36-39. Notably, before Hasan entered his guilty plea, attorney Dugan[3] affirmatively represented to this Court that he: (a) had no doubts about Hasan's competence to enter a guilty plea; (b) was satisfied that Hasan's willingness to plead guilty was voluntary; and (c) that his client had a full understanding of the nature of the charges, the maximum possible penalty provided by law, and his legal rights to contest the charges. *Id.* at 37-38.

The Probation Department issued a Presentence Investigation Report, which concluded that Hasan's total offense level was 15 and his criminal history category was I, which meant his

---

[3] Attorney Mark Much has entered an appearance for Hasan in connection with this motion, but attorney Dugan is still counsel of record and participated in a telephone conference with the Court about this motion on August 5, 2025.

sentencing range under the United States Sentencing Guidelines was 18-24 months'
imprisonment. The government recommended a sentence within that range.

On June 18, 2025, this Court sentenced Hasan to 36 months' imprisonment, which was
above his sentencing range. The Court explained that an upward variance was appropriate in this
case based on its consideration of all the factors set forth in 18 U.S.C. § 3553(a).[4]  The Court
ordered Hasan to report to prison on August 15, 2025, but permitted him to remain out on bail
until that time.

On June 30, 2025, Hasan filed a notice of appeal. ECF No. 63. On August 1, 2025,
Hasaan filed the present motion for release pending appeal or in the alternative to extend his
surrender date. In a supporting memorandum, Hasan states that one of his "appeal issues is that
the sentence provided by the Court was an abuse of discretion as the District Judge did not
provide sufficient reason to give an upward variance of the sentencing guidelines that were
calculated." ECF No. 70-2 at 3, ¶ 7. Hasan claims that this Court "abused its discretion in
providing a sentence that went above the guideline range, as it did not provide sufficient reason
to give an upward variance." *Id.* at 4, ¶ 10.

Hasan added that a second issue he would raise on appeal is that "he did not enter into a
knowing, voluntary, and intelligent guilty plea due to a language barrier." *Id.* ¶ 11. He claims
that the interpreter provided for him at his guilty plea hearing was "inadequate and spoke a

---

[4]  Those factors include (1) the nature and circumstances of the offense and the history and characteristics
of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect
for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal
conduct, and to protect the public from further crimes of the defendant;   (4) the need to provide the defendant with
educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the
guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence
disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need
to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)

different dialect, which precluded the Defendant from being able to enter a knowing, voluntary, and intelligent guilty plea." *Id.* ¶ 13.

Hasan added that he is not likely to flee or pose a danger to the safety of any other person or the community if released pending his appeal and claimed that his appeal was not for the purpose of delay. *Id.* ¶¶ 14-15.

## II.    Discussion

Pursuant to 18 U.S.C. § 3143(b), bail pending appeal is available only in limited circumstances. The statute provides:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in
>
>> (i)     reversal,
>>
>> (ii)    an order for a new trial,
>>
>> (iii)   a sentence that does not include a term of imprisonment, or
>>
>> (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

Thus, as the Third Circuit has summarized, bail pending appeal may be granted only if the defendant establishes: (1) that the defendant is not likely to flee or pose a danger to the safety

6

of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed. *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985).

An issue qualifies as "substantial" only where it is "fairly debatable," *United States v. Smith*, 793 F.2d 85, 89 (3d Cir. 1986), and would result in a term of imprisonment less than the time already served plus the duration of the appeal. A substantial question is one that is "significant in addition to being novel, not governed by controlling precedent or fairly doubtful." *United States v. Sealey*, 2019 WL 7486175, *1 (quoting *United States v. Smith*, 793 F.2d at 88). While the absence of controlling precedent does not necessarily make a question substantial, a question is substantial if the defendant can demonstrate that it is "fairly debatable" or "debatable among jurists of reason." *Id.* Whether a question is substantial should be made on a case-by-case basis. *United States v. Brand*, 223 F. Supp. 3d 437, 441 (E.D.Pa. 2016) (internal quotations and citations omitted).

This standard is "difficult to satisfy." *United States v. Banks*, No. 21-3190, 2022 WL 444262, at *1 (3d Cir. Feb. 14, 2022). Indeed, there is a legislative preference that a defendant be incarcerated upon the imposition of sentence. As the Third Circuit explained in *Miller*, the manifest purpose of Congress in enacting this provision of the Bail Reform Act of 1984 was to reverse the presumption of bail which applied under prior law in this situation. *Id.* at *22. Under the Act, the instances of bail pending appeal should be "considerably reduced in number." *Id.* at *24. *Miller* quoted favorably from a 1970 House report, written at the time Congress, writing

7

legislation for the District of Columbia, first adopted the provision which became applicable

nationwide in 1984:

> [O]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances. First and most important, the conviction, in which the defendant's guilt of a crime has been established beyond a reasonable doubt, is presumably correct in law, a presumption factually supported by the low rate of reversal of criminal convictions in the Federal system. Second, the decision to send a convicted person to jail and thereby reject all other sentencing alternatives, by its very nature includes a determination by the sentencing judge that the defendant is dangerous to the person or property of others, and dangerous when sentenced, not a year later after the appeal is decided. Third, release of a criminal defendant into the community, even after conviction, destroys whatever deterrent effect remains in the criminal law. Finally . . . the purpose of the appellate process is not to give a convicted criminal, by means of release pending appeal, an opportunity to demonstrate a basis for reducing a sentence after the conviction has been affirmed.

*Miller*, 753 F.2d at 22 (quoting H. Rep. No. 907, 91st Cong., 2d Sess. 186-87 (1970)).

Assuming for argument's sake that Hasan does not pose a danger to the community or a

risk of flight, he still has not demonstrated by clear and convincing evidence that he intends to

present any substantial issue for appellate review that is likely to result in a reversal, a sentence

that does not include a term of imprisonment, or a reduced sentence less than the total time of the

expected duration of the appeal process. Instead, Hasan has identified only two arguments that he

plans to raise in his appeal: (1) that this Court abused its discretion when it varied upward from

Hasan's recommended sentence under the Guidelines of 18-24 months' imprisonment; and (2)

that his guilty plea was invalid because the Court failed to provide him with a Bengalese

interpreter who spoke in the proper dialect.

Hasan's first argument, even if meritorious, would only lead to a reduction of his

sentence from 36 months' imprisonment to 24 months' imprisonment, and there is no reason to

believe the duration of Hasan's appeal process would exceed 24 months' imprisonment.[5]  Hasan, however, cannot demonstrate that he is likely to prevail on his argument that this Court abused its discretion when it varied upward from his advisory guidelines range of 18-24 months' imprisonment. At Hasan's guilty plea hearing, this Court advised Hasan that he could be sentenced to a maximum of five years' imprisonment on each count of conviction, and Hasan testified that he understood that possibility. At the sentencing hearing, the Court went through all of the Section 3553(a) factors and explained why the Court believed the advisory guideline range was too low: i.e., that the range failed to take into account the seriousness of Hasan's crimes and the fact that he had committed them as a public official, a man who had complained of election irregularities in the primary, and a relatively new United States Citizen who had promised to uphold the Constitution and the laws of his new country.

The Court of Appeals reviews a final sentence for unreasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005). The burden rests on the party challenging the sentence to show unreasonableness, and the Court of Appeals gives due deference to the district court's judgment. *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006). Hasan has not demonstrated a likelihood of meeting his burden in this case.

Hasan's second planned argument would be facially frivolous if he actually were to include it in his direct appeal to the Third Circuit. At his change of plea hearing, Hasan was provided with a Bengali interpreter, and for the most part, Hasan made it clear that he did not need her. Hasan swore under oath that he could read, write, and understand English, which made

---

[5]  The appellate waiver contained in Hasan's plea agreement precludes him from even challenging a within-Guidelines sentence of 24 months' imprisonment in his appeal to the Third Circuit.

sense since he was a public official who frequently participated in public meetings conducted in English. Although there were a few occasions when Hasan consulted with the interpreter before answering questions from the Court, Hasan never indicated that he could not understand the interpreter because of her dialect.

Moreover, Hasan never filed a motion in this Court to withdraw his guilty plea (perhaps because his trial counsel realizes such a motion would be frivolous). He cannot challenge the validity of his guilty plea for the first time in the Court of Appeals. No lawyer could argue in good faith to the Third Circuit that this Court committed plain error by accepting Hasan's guilty plea in this case, after Hasan assured the Court in English that he could read, write, and understand English, and that he was knowingly, willingly, and voluntarily pleading guilty. *See United States v. Olano,* 507 U.S. 725, 734-35 (1993) (it is the defendant's burden to establish plain error).

It is clear that the only reason Hasan is now claiming his guilty plea was involuntary because he could not understand his interpreter's dialect is because he is unhappy with the 36-month sentence he received for his very serious crimes. At his plea hearing, Hasan represented – *in English* – that he understood that he would not be able to withdraw his guilty plea because he was unhappy with his sentence. He is not likely to persuade the Court of Appeals to vacate his conviction based on the argument he raises for the first time in this motion.

### III.    Conclusion

For all the foregoing reasons, the government respectfully submits that the defendant's motion for release pending appeal or, alternatively, to extend his surrender date, is without merit and should be denied.

Respectfully submitted,
DAVID METCALF
United States Attorney

*/s/ Mark B. Dubnoff*
MARK B. DUBNOFF
Assistant United States Attorney

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by email and the Court's ECF electronic court filing system upon:

Mark Much, Esq., and
Michael S. Dugan, Esq,
Counsel for the Defendant

Date: August 7, 2025                          */s/ Mark B. Dubnoff*_____
                                              MARK B. DUBNOFF