### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF PENNSYLVANIA (PHILADELPHIA)

```
THE UNITED STATES OF AMERICA )
                             )
              Plaintiff,     )    Case No. 25-CR-00057-3
                             )    United States Courthouse
        vs.                  )    Philadelphia, PA
                             )    June 18, 2025
MD RAFIKUL ISLAM,            )    9:33 a.m.
              Defendant.     )
_____      )
```

### TRANSCRIPT OF SENTENCING HEARING
### BEFORE THE HONORABLE HARVEY BARTLE, III,
### UNITED STATES DISTRICT COURT JUDGE

**APPEARANCES:**

```
FOR THE PLAINTIFF:                  MARK B. DUBNOFF
UNITED STATES OF AMERICA            U.S. Attorney's Office
                                    615 Chestnut Street
                                    Suite 1250
                                    PHILADELPHIA, PA 19106


FOR THE DEFENDANT:                  ROBERT C KELLER
MD RAFIKUL ISLAM                    Keller, Lisgar
                                     & Williams, LLP
                                    110 E. Darby Road
                                    HAVERTON, PA 19083


Electronic Sound Recorder:          NICOLE D. SPICER
```

Transcript produced by:
    DATAGAIN Inc.,
    10750 Moore Drive, Parkland, Florida 33076
    and 1 Creekside Court, Secaucus, New Jersey 07094


Proceedings recorded by electronic sound recording.

```
 1                              INDEX

 2

 3    SWORN TESTIMONY            Direct   Cross  Redirect   Recross

 4    Government's Witnesses

 5    None.

 6    Plaintiff's Witnesses

 7    Ishaque Ibrahim             7

 8    Tari Aziz                   8

 9    Jahin Saqafi               11

10

11    EXHIBITS                        Introduced           Admitted

12    None.                               -                   -

13

14    ORAL ARGUMENTS                                       Commenced

15    Mr. Dubnoff                                              4

16    Mr. Keller                                               5

17    Mr. Islam                                               15

18

19

20    SENTENCE

21    The Court                                              15

22
```

```
 1              (Proceedings Started at 9:29 a.m.)

 2         (Call to Order of the Court)

 3              THE COURT: Good morning.

 4              MR. KELLER: Good morning, Your Honor.

 5              MR. DUBNOFF: Good morning, Your Honor.

 6              THE COURT: The Court has before it this morning the

 7    Sentencing Hearing in the case of the United States of

 8    America versus Mohammad Rafikul Islam, Criminal Action 25-57-

 9    3.

10              Mr. Dubnoff, I'll hear from you first.  Then I'll

11    hear from the Defense Counsel, and then from the Defendant.

12              MR. DUBNOFF: Thank you, Your Honor.

13              Mark Dubnoff for the United States of America.

14              I'll have the FBI Agent introduce himself.

15              Jason?

16              MR. HUFF (PHONETIC):  Good morning, Your Honor.

17              THE COURT: Good morning.

18              Mr. HUFF (PHONETIC): Jason Huff.

19              MR. DUBNOFF: And, Your Honor, we put forward most

20    of our arguments in the Memo, and I'm prepared to address the

21    - some of those points.

22              Before I do, I would like to introduce Your Honor

23    to one of the victims in this case, which is Mayor Tayub.

24              Mayor Tayub, would you stand up?

25              MR. TAYUB: Good morning.
```

1          MR. DUBNOFF: I - I want the Court to be aware,

2    obviously, that this was - this was an individual whom the

3    Defendant and his Co-Conspirators tried to steal the election

4    from.

5          You can sit down now.

6          MR. TAYUB: Thank you.

7          MR. DUBNOFF: This is a very serious case, Your

8    Honor.

9          We've put forward a - a detailed description of

10   what happened in - well, in both the Indictment and the

11   Sentencing Memorandum.

12         The guidelines  here call for a zero to six month

13   sentence. We support that.

14         We're also, as I tried to clarify to Defense

15   Counsel today, for this particular Defendant, given his role

16   in the offenses, we are not seeking imprisonment, but we are

17   seeking a restriction of his liberty. We think that such a

18   restriction would serve the - the 3553(a) factors, and I can

19   address those if we have an agreement as to the guideline

20   range, which I think we do.

21         MR. KELLER: We do.

22         MR. DUBNOFF: Hearing from the Defense that we do.

23         There should be some -.

24         We believe that a sentence that would restrict his

25   liberty to some extent, impose some sort of community service

1    requirement as a condition of supervised release, or if the

2    Court does not order any restriction, a probationary

3    sentence, and a sentence that includes a guideline fine,

4    would best serve the sentencing factors set forth in 3553(a).

5    Those factors, as Your Honor knows, include a need to promote

6    - to serve the public interest, to have general and specific

7    deterrence. We want to send a message with these cases that

8    attempts to undermine the American electoral system are very

9    serious and will not be tolerated and will be punished.

10            Now, we have two other Defendants who will be

11   before Your Honor - one later today, one next week. And for

12   those Defendants, we're seeking imprisonment.

13            This particular Ofendant (sic, phonetic) -

14   Defendant knew exactly Mr. Hasan was trying to do, after

15   losing the primary to Mr. Tayub. He knowingly and willfully

16   helped Mr. Hasan try to steal that election. He knowingly and

17   willfully let Mr. Hasan use his email addresses as part of

18   that scheme.

19            And I'm happy to answer any questions Your Honor

20   has, but - but the Government is seeking a sentence of some

21   restriction on his liberty, zero to six months, followed by

22   supervised release, a fine, and a community service

23   requirement, Your Honor.

24            MR. KELLER: Your Honor, good morning.

25            THE COURT: Good morning.

```
1              MR. KELLER: Your Honor, in the courtroom we have
2    friends and family. I'm not going to be announcing all their
3    names, but if I can just have them stand up and - and - so
4    that the Court -
5              THE COURT: You may.
6              MR. KELLER: - can see that we have a lot of support
7    here.
8              Those here in support Mr. Islam, please stand up.
9              In particular, Your Honor, we do have my client's
10   wife is here, and -
11             MR. ISLAM: My son.
12             MR. KELLER: - and son.
13             Yeah, we're going to have your son speak.
14             Thank you very much.
15             Your Honor I have three individuals who would like
16   to address the Court this morning -
17             THE COURT: They may.
18             MR. KELLER: - if I can have them come up.
19             Thank you so much.
20             And I'll get them to state their - their actual
21   names and - and - and spellings.
22             The first one, because there's a commitment to
23   work, Mr. Ibrahim, please come forward.
24             (BACKGROUND NOISE)
25             MR. KELLER: Sir, would you please announce your
```

```
 1   name and spell your - I'm sorry.

 2              THE CLERK: Just a minute.

 3              (The Witness is Sworn)

 4              THE CLERK: Would you please state and spell your

 5   name for the record?

 6              MR. IBRAHIM: It's Ishaque Ibrahim. Spelling, I-S-H-

 7   A-Q-U-E. Last name is Ibrahim, I-B-R-A-H-I-M.

 8              THE CLERK: Thank you.

 9              ISHAQUE IBRAHIM, CHARACTER WITNESS

10                    DIRECT EXAMINATION

11   BY MR. KELLER:

12   Q   Mr. Ibrahim, good morning.

13   A   Good morning.

14   Q   So, let His Honor know how long you've known Mr. Islam.

15   A   Thank you, Your Honor. Thank you for allowing me to say

16   a few words about Mr. Islam here.

17       It has been a privilege to get to know Mr. Islam for

18   over a decade right now.

19       I will tell you that from - from the personal life, he's

20   been a great friend, helped me so many ways. Got - get to - I

21   - it - it - it - it has been an honor to get to know him and

22   his family. He treated me like his own brother. So, I'm -

23   this is what I'm only talking about myself, but I've seen

24   him do that with the community as well.

25       Within the community, what I got to learn from everyone
```

```
1    is that he is very well respected, very trusted. People, you

2    know, look up to him in so many different levels.

3         You know, it's very heartbreaking to see him in this

4    situation right now.

5         Just keep in - in your - keep - keep it in mind the fact

6    that in the positive - positive impact that he has on me, and

7    - and others in the - in the - within the community.

8              THE COURT: Thank you very much.

9              MR. KELLER: Thank you very much.

10             (BACKGROUND NOISE

11             MR. KELLER: Mr. Aziz?

12             (BACKGROUND NOISE)

13                  (The Witness is Sworn)

14             THE CLERK: Would you please state and spell your

15    name for the record.

16             MR. AZIZ: My first name is Tariq, T-A-R-I-Q. And

17    last name is Aziz, A-Z-I-Z.

18             THE CLERK: Thank you.

19                  TARIQ AZIZ, CHARACTER WITNESS

20                     DIRECT EXAMINATION

21    BY MR. KELLER:

22    Q    So, what would you like to tell His Honor?

23    A    Your Honor, thank you for me giving the opportunity to

24    tell a few words in front of you.

25         I know MD Rafikul Hasa- - Islam for around 15 years. And
```

1   in these 15 years, I - I get to know him, and I always find

2   him a - a great person. I always look up to him for guidance

3   for doing - doing good things.

4       I can repeat almost the same thing that Ishaque say,

5   because those are - they're all things that's true to me

6   also.

7       But I want to narrate a very small incident where he -

8   he specifically helped me a lot. A few years back I - I need

9   to change my house rent, so I rent a new place, and because

10  the old place, it got - rent got expired. But before I moved,

11  a few days before I moved, the new owner or landlord said me

12  that the place is not ready yet for some - some concerns. I

13  had to wait like a few weeks, and I did not have any other

14  place to go.

15          And Islam was in back home in Bangladesh at that

16  time, and I don't remember if I called him or he know from

17  some other friend, he let me know that one of friend has his

18  house key and car key. So, he told me, go to this friend, get

19  my house key, get my car key, put all your stuff in my car,

20  and come to my place and you can stay in my place as - until

21  your new place is ready, and I have things in my fridge you

22  can take out, and cook. And like I can use his house as like

23  my house for a few weeks, which was a great - great benefit

24  for me at that time because I did not have any place to go.

25          And this is one of the - like a lot of other

1    incident where I see where he is helping other friend,

2    helping me or someone else. As I said, for different

3    guidance, I look up to him.

4            So, I know this is what - what happened is very

5    serious, I understand it. And I know this was a big mistake,

6    as he did. But we - while I know him, this is not true him as

7    I know of him. So, I just hope, Your Honor will just - will

8    see that this is not only his character. He is not a -

9    someone who will always do the wrong - wrong thing. So, I

10   hope you will be in leniency and so that he get the

11   opportunity to do more good for the community and friends,

12   us.  So, thank you very much.

13           THE COURT: Thank you.

14           MR. KELLER: Your Honor, my last witness is my

15   client's son.

16           (BACKGROUND NOISE)

17                   (The Witness is Sworn)

18           THE CLERK: Would you please state and spell your

19   name for the record.

20           MR. SAQAFI: Jahin, first name, J-A-H-I-N. Last

21   name, Saqafi, S-A-Q-A-F-I.

22           THE CLERK: Thank you.

23               TARIQ AZIZ, CHARACTER WITNESS

24                   DIRECT EXAMINATION

25   BY MR. KELLER:

A    Your Honor, my name is Jahin Saqafi, and I am the son of Mohammad Islam. I truly appreciate the opportunity to speak today.

I understand the serino- (sic, phonetic) - serious of this situation, and I am not here to make any excuses for my father, but only to speak about the man I know him to be.

Unlike many, I'm fortunate to say that my father has been present throughout all 20 years of my life. Whenever I've faced a problem, I've always been able to turn to him. No matter the issue, I know he's just a call away. He's the hardest working person I know and has given everything he has to ensure that my mother and I live a stable and secure life.

Since this situation began, my dad has been very honest with me about what happened and the mistakes he's made. I've seen firsthand how heavily this has weighed on him - sleepless nights, stress, and deep regret. He fully understands the gravity of his actions, and I believe he is genuinely committed to learning from this and becoming better.

I know you have a difficult responsibility, Your Honor. I simply wanted to share how I see my father, as a truly good man who has made a mistake, a serious mistake. But he also is someone who loves his family and wants to do better. I hope you will take this into consideration when making your decision.

1      Thank you.

2              THE COURT: Thank you.

3              MR. KELLER: Your Honor, we've submitted a

4      Sentencing Memorandum, and we attached many, many letters

5      from friends and family, which -.

6              THE COURT: Yes. I - I've read each one.

7              MR. KELLER: I know - I'm sure you did, Your Honor.

8              Your Honor, I've been blessed, in a way, to have

9      met Mr. Islam and his family, and I can tell this Court that

10     he is truly remorseful.

11             Mr. Islam has been speaking to the Government about

12     this case for a couple of years now. He met with them on many

13     occasions before I even got involved, and then after I got

14     involved we actually met with the Prosecutor and the

15     Investigator, and my client continued to speak and be upfront

16     and honest about - of what he did and - and what he was

17     wrong.

18             The Court is well aware of the guidelines and is

19     aware of the comments about the guidelines and about the

20     discretion that Your Honor has in this matter.

21             My client is a very hard worker. He not only takes

22     care of his wife and son, but he has two ill parents in

23     Bangladesh that are not well, and he sends them funds, and he

24     does help support them. His wife, who's here, was in my

25     office the other day, she intended to speak but she's not

1    feeling well today. She does have health problems, Your

2    Honor. Even though she tries to keep a small job, it is

3    difficult for her to work. My client is really the sole

4    financial support for the family.

5            The young man, his son, is - is an honorable young

6    man, just co- - graduated college. He's now newly married.

7    His wife now, who is here also, lives in the family home in

8    Millbourne.

9            Mr. Osla- (sic, phonetic) - Islam, I - I guess his

10   - one of his - his weak - and I wouldn't say it's a weakness,

11   but - but what led to this whole criminal episode is his -

12   that he's so helpful and decided to help a friend, and I put

13   that in quotations, because he helped this friend commit a

14   crime. And he - and he understands that what he did is wrong,

15   and it - it is so out of character for him because he is

16   honorable and noble, and - and has tried to do the right

17   things.

18           And here, he let his friendship and - and just

19   weakness to - to commit this crime, and - and it's something

20   that he has to live with. And when he told his son about it,

21   he - and it just - it - it's heartbreaking because his son,

22   who you could see, thinks so highly of him. And for him to

23   have to admit to his son that he committed this crime, and to

24   live with the - the fact that's now a convicted felon in this

25   community is really dramatic and has caused a lot of grief to

1    - to Mr. Islam and - and - and it is) - and - and I'm not

2    saying this lightly, has caused him to have these sleepless

3    nights, and - and just this recognition that he let himself

4    down, his family down, and his community.

5            And I - I just cannot understate that that is

6    something that is going to last well beyond whatever the

7    sentence that Your Honor imposes, and - and I'm submitting

8    that that is a sentence - a life sentence. And - and because

9    this matter is so serious, it's something he will have to

10   live with and carry with him forever. It's gotten in the

11   newspaper, it's out there in the public domain and everyone

12   knows what he did, and that is punishment, I submit, maybe,

13   you know, something that he deserves.

14           But I submit, Judge, to deprive him of his freedom,

15   or to - to make this a lengthy sentence is not necessary. It

16   is never going to happen again. He is remorseful. He

17   understands what he did is wrong. And I'm asking the Court to

18   be reasonable and to give him probation, and if the Court

19   thinks that community service some - somehow is - is

20   appropriate, then - then so be it. But I'm asking that the

21   Court not deprive him of - of his liberty, to let him work,

22   let him attend to his family, and to live with the - really

23   the badge of being a convicted felon.

24           THE COURT: Mr. Dubnoff, anything further?

25           MR. DUBNOFF: No, Your Honor.

1        THE COURT: Mr. Islam, this is your opportunity to

2    address the Court, to advise me of anything I should know

3    about you and your situation before I pronounce sentence.

4        You may come forward, if you want, and Ms. Spicer

5    will swear you in.

6                    (The Witness is Sworn)

7                  MD RAFIJUL ISLAM, DEFENDANT

8                      DIRECT EXAMINATION

9    BY MR. KELLER:

10   A    Whatever I did, it is - it was big mistake, big wrong.

11   So, I'm very sorry. I'm very, very sorry, sir. That's all.

12        MR. KELLER: Your Honor, my client is a college

13   graduate. He met his wife in college.

14        And - and this is how he's been. I mean, he's -

15   he's a man of few words, and he's just so shamed because of

16   what he did.

17        THE COURT: All right.

18        MR. KELLER: Thank you.

19        THE COURT: All right. Thank you.

20        Mr. Islam, you have pleaded guilty in this court to

21   one count of conspiracy; three counts of false information in

22   registering individuals to vote and aiding and abetting; and

23   three counts of fraudulent voter registration and aiding and

24   abetting.

25        I must first calculate your sentence under the

1    advisory sentencing guidelines. The base offense level in

2    this case under those guidelines is 12. I find you have

3    accepted responsibility for your conduct, which permits me to

4    department downward two levels, and I also find that you're a

5    zero point offender, which permits me to depart downward two

6    extra levels, for a total offense level of 8. You have no

7    criminal history points for criminal history category of 1.

8    Under the sentencing guidelines, you could be sentenced to

9    between zero and six months in prison.

10        Before determining what sentence to impose, I'm -

11   and fashion a sentence which is sufficient but not greater

12   than necessary, I must take into account various factors

13   under Title 18, United States Code, Section 3553(a). Those

14   factors include the nature and circumstances of the offenses,

15   and the history and characteristics of you, the Defendant;

16   the seriousness of the offenses; the need to promote respect

17   for the law; the need to provide a just punishment for the

18   offenses; the need to afford adequate deterrence to criminal

19   conduct; and the need to protect the public from further

20   crimes of you, the Defendant.

21        First, I want to turn to the seriousness of the

22   offenses. In the Court's view, these offenses are some of the

23   most serious criminal offenses that you could commit. What

24   you did struck at the heart of our democratic process. The

25   right of all citizens to have free and fair elections was at

1    stake here, and without fair and free elections, our

2    democracy doesn't exist.

3          And what made it more serious in your case is that

4    it wasn't just one or two fraudulent votes, it was almost

5    three dozen, and you were involved in that conspiracy.

6          You were also not simply an ordinary citizen, but

7    it's my understanding you were a member of the Millbourne

8    Borough Council at the time.

9          And in addition, I believe you're a naturalized

10   citizen. When you became a naturalized citizen, you took an

11   oath to support and defend the Constitution of the United

12   States, and you have not supported and defended the

13   Constitution of the United States. And in failing to do so,

14   you put all of us in jeopardy.

15         Now, in terms of deterrents, I agree that it's

16   unlikely you will ever be before this Court or any other

17   Court again. However, the Court must be concerned about

18   general deterrents de- - to deter others from similar

19   conduct. The Court wants to do everything in its power to

20   deter people from casting fraudulent votes so that we have

21   free and fair elections in this country, so that we have

22   vigorous campaigns, but ultimately there's going to be a

23   winner and a loser, and we have to respect that. Not

24   everybody wins. And I want to do what I can to deter others

25   from engaging in the type of conduct that you engaged in.

1          As I said, I'm not concerned about protecting the

2     public from further crimes of you, the Defendant. As I said,

3     I doubt that will happen any time in the future.

4          The Court also must be mindful and re- - of

5     promoting the respect for the law, particularly our election

6     and voting laws, that goes without saying.  And the Court

7     needs to impose a punishment which is just under the totality

8     of the circumstances.

9          And I must also consider the nature and

10    circumstances of the offenses, which I've alluded to,

11    particularly your role as a public official, and the extent

12    of the fraud, and also your history and characteristics.

13         I have read all the letters that were submitted on

14    your behalf. I've listened closely to what was said here

15    about you in the courtroom. And from what I know, you have

16    been an exemplary citizen, have blameless record, except for

17    the events which bring you here today.

18         So, the Court must consider all those factors.

19         But, to me, the most important factor here is

20    trying to protect the integrity of our election process,

21    particularly, protect it against people who are in public

22    office who are undermining the system.

23         So, under the totality of the circumstances, I am

24    going to disagree with the Government's position. I think the

25    Government doesn't realize how serious this matter is, quite

1    frankly, and I'm going to commit you into the custody of the

2    Attorney General of the United States for a period of

3    imprisonment of one year and one day on each of these seven

4    charges, the sentences to run concurrently.

5         I'm going to impose one year of supervised release

6    on each count to follow your imprisonment, and the terms of

7    supervised release are to run concurrently.

8         I impose a fine of $1,000, which should be paid

9    with 30 days; and a special assessment of $700, which is due

10    immediately.

11         To the extent you have not waived your right to

12    appeal, I advise you of your right to appeal your sentence to

13    the United States Court of Appeals for the Third Circuit. If

14    you cannot afford Counsel, the Court will appoint Counsel to

15    represent you free of charge. Any Notice of Appeal must be

16    filed within 14 days after I sign the Judgement and

17    Commitment Order. If you wish a Notice of Appeal to be

18    entered, you may indicate that to the Deputy/Clerk today, and

19    she will enter a Notice of Appeal on your behalf.

20         Anything further at this time?

21         MR. KELLER: Yes, Your Honor.

22         Your Honor, because he lives locally and has all

23    these relatives, I'm - I'm respectfully asking that you

24    consider putting into Section 4 that he be sent to

25    (INDISCERNIBLE 9:53:14), like one of the local -.

1              THE COURT: I will just recommend that he be

2      sentenced to an institution as close to Philadelphia as

3      possible.

4              MR. KELLER: Appreciate that.

5              THE COURT: And I will order him to self-surrender

6      on August 15, 2025.

7              Anything further at this time?

8              MR. DUBNOFF: No, Your Honor.

9              THE COURT: All right. Thank you very much.

10             (Proceedings concluded at 9:53 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATION OF TRANSCRIPTION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


 Signature of Approved Transcriber:

*Delanie Shepherd*

 Typed or Printed Name:        Delanie Shepherd

 Date:                         August 13, 2025